# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 10cr558 BTM |
|---|---|
| Plaintiff, | **ORDER DENYING MOTION TO DISMISS INDICTMENT** |
| v. | |
| SALVADOR HERNANDEZ-ESTRADA, | |
| Defendant. | |

Defendant Hernandez-Estrada has filed a motion to dismiss the indictment due to invalid deportation [Doc. 21]. For the following reasons, the Court **DENIES** the motion.

## I. BACKGROUND

**1.  Defendant's Criminal History**

Defendant has several criminal convictions in California. In February 1996 he was convicted of a felony violation of California Health and Safety Code § 11351.5, possession of cocaine base for sale, and his sentence was suspended on the condition that he serve 181 days in jail and 3 years probation. (Opp. Br., Ex. 1, at 1.) In May 2001, he was convicted of a felony violation of California Health and Safety Code § 11360, transportation of marijuana, and his sentence was again suspended on the condition that he serve 180 days in jail and 3 years probation. (Opp. Br., Ex. 2, at 7.) His probation was later revoked and in April 2006 he was sentenced to 365 days in jail. (*See id.* at 8.) In May 2006, he was

convicted of a misdemeanor violation of California Vehicle Code § 23152(b), driving under the influence, and sentenced to 160 days in jail and 4 years probation. (Opp. Br., Ex. 3, at 14.)  He was then convicted of a misdemeanor violation of California Vehicle Code § 14601.2(a), driving with a suspended license, and sentenced to 90 days jail.  (*See id.* at 2.)  Finally, in November 2008 he was convicted of a felony violation of California Penal Code § 417(b), exhibiting a loaded firearm, and sentenced to two years prison. (Opp. Br., Ex. 4, at 14.)

**2.     Defendant's Immigration History**

On October 8, 2009, an immigration judge ("IJ") ordered Defendant to be deported to Mexico.  At Defendant's deportation hearing, the IJ considered Defendant's eligibility for voluntary departure.  (Def.'s Suppl. Exs. at 18.)  In considering voluntary departure, the IJ said he would "weigh all the good against all the bad."  After asking questions about Defendant's family and property in the United States, the IJ noted Defendant's conviction under § 417(b) of the California Penal Code.  Defendant admitted to being convicted in November 2008 under that statute.  (*Id.* at 17–19.)  The conviction, according to the IJ, was an aggravated felony and a crime of violence.  The IJ said, "I find that code section is categorically a crime of violence under section 16b of title 18 U.S. Code, so I must deny [voluntary departure].  You do not have to accept my decision."  Defendant affirmed that he understood that he had the right to appeal but declined to do so.  Defendant also said he understood that by not appealing, he would never be able to appeal.  (*Id.* at 19.)

Defendant was then removed to Mexico.  On December 9, 2009, the Border Patrol found Defendant in the United States near the Mexican border.  Defendant has been charged with being found in the United States after removal in violation of 8 U.S.C. § 1326.

## II.  LEGAL STANDARD

A defendant charged with a violation of 8 U.S.C. § 1326 has a Fifth Amendment right to collaterally attack his removal order because the removal order serves as a predicate

element of his conviction. *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047–48 (9th Cir. 2004). To sustain a collateral attack under Section 1326(d) a defendant must show that (1) he exhausted all administrative remedies available to him to appeal his removal order; (2) the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and (3) entry of the order was fundamentally unfair. *Id.* at 1048. "An underlying removal order is fundamentally unfair if (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *Id.* (quoting *United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998), *cert. denied*, 252 U.S. 849 (1998)). A defendant bears the burden of showing that he was prejudiced. *United States v. Leon-Leon*, 35 F.3d 1428, 1431 (9th Cir. 1994; *United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1056 (9th Cir. 2003).

### III. DISCUSSION

**1.    Defendant Has Not Exhausted His Administrative Remedies**

One of the requirements for collaterally attacking a removal order is that the defendant has exhausted his administrative remedies by appealing the order. *United States v. Villaviciencio-Burruel*, 608 F.3d 556, 559 (9th Cir. 2010) (citing 8 U.S.C. § 1326(d)(1)). A defendant who validly waives his right to appeal the removal order is barred from collaterally attacking it. *United States v. Ubaldo-Figuerora*, 364 F.3d 1042, 1048 (9th Cir. 2004). But if the waiver was not "considered and intelligent," then the waiver does not comport with due process and is invalid. *Id.* In order for a waiver to be considered and intelligent, the IJ must "expressly and personally inform the alien that he has the right to appeal." *See id.* at 1049.

In *Ubaldo-Figuerora*, which Defendant cites, the Ninth Circuit held that the defendant's waiver was not considered and intelligent because the IJ in that case "failed to inform [the defendant] that he had the right to appeal his removal order." *Id.* Although the IJ mentioned in English the right to appeal to the defendant's lawyer, it was not translated into Spanish for the defendant's benefit. The waiver was therefore invalid because the "IJ failed to ensure that [the defendant] knew that he had the right to appeal." *Id.*

The situation here was very different. The IJ explicitly told Defendant he had the right to appeal the removal order. After considering Defendant for voluntary departure and finding him ineligible because of a past conviction, the following exchange occurred:

IJ: You do not have to accept my decision. Do you understand that if you do not appeal, you can never appeal?

Defendant: Yes.

IJ: Now that you know my thinking *( )*[1] do you want to appeal?

Defendant: No.

IJ: Do you understand that if you did appeal *( )* . . .

Defendant: Yes.

IJ: Now, do you want to appeal?

Defendant: No.

IJ: Then I find you waived.

It is unclear what more the IJ should have done to inform Defendant of his right to appeal. The IJ told him that he did not have to accept the IJ's decision. And Defendant confirmed that he understood if he did not appeal then that he was forever waiving his right to do so. This is not a case where the IJ failed "to so inform the alien [of his or her eligibility for relief from removal]." *Ubaldo-Figueroa*, 364 F.3d at 1050 (bracketed text in original). Instead, here the IJ explicitly considered Defendant's possibility of voluntary departure and found that he was ineligible. He then told Defendant he had a right to appeal, which Defendant waived.

In supplemental briefing, Defendant cites authority holding that a "waiver cannot have been valid if the record contains an inference that he was eligible for relief, but the IJ misadvised him to the contrary." *United States v. Leon-Paz*, 340 F.3d 1003, 1005 (9th Cir. 2003); *see also United States v. Pallares-Galan*, 359 F.3d 1088, 1096 (9th Cir. 2004). But those cases are distinguishable. First, the IJ here said to Defendant, "You do not have to

---

[1] The Court assumes that the italicized parentheses in the transcript denote portions of the tape which are inaudible or cannot otherwise be transcribed.

accept my decision," and then asked him several times if he wanted to appeal.  He also expressly considered Defendant's eligibility for voluntary departure before deciding that he was ineligible.  But most importantly, the IJ was right.  Defendant, as discussed below, was ineligible for voluntary departure and therefore his waiver was considered and intelligent, and he failed to exhaust his administrative remedies.

### 2. Entry of the Deportation Order Was Not Fundamentally Unfair

Defendant must also show that the deportation order was fundamentally unfair.  *See id.* at § 1326(d)(3); *Ubaldo-Figueroa*, 364 F.3d at 1048.  A deportation order is fundamentally unfair if (1) defects in the proceeding violated the defendant's due-process rights and (2) he suffered prejudice as a result of the defects.  *Id.*  To show prejudice, a defendant "must only show that he had a 'plausible' ground for relief from deportation."  *Id.* at 1050.  As discussed above, the Court finds that there was no due process violation.  Still, the Court considers whether Defendant was prejudiced and whether he had a plausible ground for relief.

Defendant argues that he was eligible for relief from deportation in the form of voluntary departure.  To be eligible for voluntary departure, an alien must show he is "not deportable under section 1227(a)(2)(A)(iii) or section 1227(a)(4)(B) [relating to terrorist activities] of this title."  8 U.S.C. § 1229c(a)(1).  Section 1227(a)(2)(A)(iii) states that "[a]ny alien who is convicted of an aggravated felony at any time *after admission* is deportable" (emphasis added).  Although Defendant concedes for the sake of this motion only that he was convicted of an aggravated felony, he argues that he was not convicted of an aggravated felony *after admission* because he was never admitted to the United States.  He came to this country illegally.

The United States argues that the statute should be construed to incorporate only the "aggravated felony" portion of § 1227(a)(2)(A)(iii), and make voluntary departure unavailable to all aliens who have been convicted of an aggravated felony, regardless of whether they were admitted lawfully. In support of this argument, the United States cites *United States v. Hernandez-Vermudez*, 356 F.3d 1011 (9th Cir. 2004), which held that another statute which

incorporated § 1227(a)(2)(A)(iii) only incorporated the "aggravated felony" portion and applied to all aggravated felons, regardless of whether they were legally admitted to the United States. Although the Court notes that there are distinctions between this case and *Hernandez-Vermudez*,[2] the Court need not resolve this question here because the Attorney General has the authority to limit the class of aliens which are eligible for voluntary departure. *See* 8 U.S.C. § 1229c(e). So even if Defendant's interpretation is correct, the Attorney General can and has decided that all aggravated felons are ineligible for voluntary departure, regardless of whether they came to the United States legally.

Under 8 U.S.C. § 1229c(e), the "Attorney General may by regulation limit eligibility for voluntary departure under this section for any class or classes of aliens." The Attorney General has enacted regulations which provide that an alien who has been convicted of an aggravated felony is ineligible for voluntary departure. *See* 8 C.F.R. § 1240.26(b)(1)(i)(E). The regulations do not limit themselves to only those aggravated felons who have been admitted. *See id.* If the regulation is valid, then Defendant was not entitled to voluntary departure and he suffered no prejudice when the IJ denied it.

Defendant argues that the regulation is invalid for two reasons. The first is that the regulation contradicts the language of §§ 1229c(a)(1) and 1227(a)(2)(A)(iii) because those provisions arguably only make aliens who committed aggravated felons *after admission* ineligible for voluntary departure. The regulation, however, supposedly expands that provision to include all aggravated felons. Even assuming Defendant's interpretation of §§ 1229c(a)(1) and 1227(a)(2)(A)(iii) is right, there is no contradiction between the regulation and those provisions. The regulation only expands the class of ineligible aliens, which the statute gives the Attorney General the right to do. It does not contradict §§ 1229c(a)(1) and 1227(a)(2)(A)(iii) by, for example, making *eligible* for voluntary departure aliens who

---

[2] Among the distinctions are that the provision in *Hernandez-Vermudez*, 8 U.S.C. § 1228(b), more clearly indicated Congress's intent to "expedite the removal of criminal aliens who are not lawful permanent residents," regardless of whether the aliens were admitted. *Hernandez-Vermudez*, 356 F.3d at 1014. Congress indicated this by the title of the statute, which is "Removal of aliens who are not permanent residents," and by specifically defining the class of aliens ineligible for expedited administrative removal, which did not include illegal aliens. *See id.*

committed aggravated felons after admission. There is no contradiction here.

The second reason Defendant believes the regulation is invalid is because § 1229c(e) "impermissibly delegates legislative power to an executive agency and violates separation of power." (Def.'s Br. 5). The provision allows the Attorney General "by regulation [to] limit eligibility for voluntary departure under this section for any class or classes of aliens." 8 U.S.C. § 1229c(e). Congress expressly gave the Attorney General the discretion to decide which additional class or classes of aliens should be ineligible for voluntary departure. *Id.* And it only allowed the Attorney General to limit the class or classes eligible, not expand them. *See id.* Plaintiff argues that the provision gives the Attorney General authority to enlarge the class of ineligible aliens to include all aliens, effectively repealing the voluntary departure statute. But a reasonable reading of § 1229c(e) does not give the Attorney General that authority. The provision is titled "Additional conditions" and allows the Attorney General to "limit eligibility" for any class or classes of aliens. 8 U.S.C. § 1229c(e). It does not expressly allow the Attorney General to limit eligibility completely, and the Court is required to construe a statute so that it is constitutional "so long as such a reading is not plainly contrary to the intent of Congress." *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994). Reading the statute to allow only additional limitations on eligibility for classes of aliens—but not denying eligibility to all aliens—is a reasonable interpretation, given the use of the phrase "Additional conditions" and the lack of express authority to completely limit eligibility.

The nature of the rulemaking authority in § 1229c(e) is straightforward. Although it does not give the Attorney General express guidance on which additional class or classes of aliens should be denied eligibility for voluntary departure, it sufficiently limits the Attorney General's discretion to add additional limitations which do not completely extinguish the right to voluntary departure. Section 1229c(e) is therefore not an unconstitutional delegation of legislative power.[3]

---

[3] While not binding precedent, the Court notes, but does not rely on, the unpublished Ninth Circuit opinion in *United States v. Ramierz-Lopez*, 251 Fed. Appx. 390, 391 (9th Cir. 2007), where a panel of the Ninth Circuit held "Congress expressly authorized the Attorney

The IJ found that Defendant had been convicted of an aggravated felony under California Penal Code § 417(b). Defendant does not attack that finding. Defendant also appears to have been convicted of an aggravated felony on February 8, 1996, when he was convicted of California Health and Safety Code § 11351.5, possession of cocaine base for sale. *See Bradshaw v. Mukasey*, 302 Fed. Appx. 548, 549 (9th Cir. 2008) (unpublished); *Cazarez-Gutierrez v. Ashcroft*, 382 F.3d 905, 912 (9th Cir.2004) (holding that a state drug offense is an aggravated felony for immigration purposes only if it would be punishable as a felony under federal drug laws or if the crime contains a trafficking element). Therefore, he was ineligible for voluntary departure and has suffered no prejudice.

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss the indictment [Doc. 21].

**IT IS SO ORDERED.**

DATED: September 10, 2010

Honorable Barry Ted Moskowitz
United States District Judge

---

General to exercise his discretion to determine who may be permitted to voluntarily depart, and sufficiently delineated the field within which the Attorney General is to exercise that discretion. Therefore, 8 U.S.C. § 1229c is a constitutional delegation of rulemaking authority."